## P. A. B. WIDENER v. C. C. BEGGS, ET AL.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 8, 1887—Decided January 3, 1888.

The will of a testator having disposed of certain portions of his estate, real and personal, provided: "The balance of my estate shall be divided between my children, share and share alike, except what may be coming to my daughters Lizzie and Lulu. Their moneys to be invested by my executors in bonds, mortgages or other good securities, they receiving the interest on same, and at their death to revert to their children after they have arrived at the age of twenty-one years:" *Held*, That the latter clause did not limit the shares of said daughters in the real estate coming to them under the first clause, and that the estate given to them therein was a fee simple.

Before Gordon, C. J., Paxson, Sterrett and Williams, JJ.; Trunkey, Green and Clark, JJ., absent.

No. 250 October Term 1887, Sup. Ct.; court below, No. 120 December Term 1887, C. P. No. 1.

This was an amicable action in ejectment in which C. C. Beggs and Lizzie D., his wife, in right of said wife, and H. C. Beggs, and Lulu D., his wife, in right of said wife, were plaintiffs, and P. A. B. Widener, trustee, was defendant. On September 27, 1887, a case stated in the nature of a special verdict was filed, whereby it was shown:

That Joseph Dilworth, of Pittsburgh, died on February 26, 1885, leaving to survive him his wife, Louisa M. Dilworth, and five children, to wit: Lawrence, Charles R. and Joseph R. Dilworth, and Lizzie, the wife of C. C. Beggs, and Lulu, the wife of H. C. Beggs. The decedent left a will dated December 27, 1884, duly admitted to probate on March 25, 1885, and letters issued thereon to the executors therein named. This will provided:

1. I give to my beloved wife Louisa, in lieu of dower, my present residence with the lands and improvements as the same may be found at the time of my death; the same being on the southern side of Fifth avenue, Twenty-second ward, Pittsburgh. Also the whole of my household furniture, pictures, goods and wares together with my carriages, wagons and other vehicles, and all horses, cattle and other live stock on hand, the same not to be appraised or placed in any inventory whatever, as is usually required by law.

2. It is my desire that my beloved wife Louisa, shall have the interest that I now hold in the firm of Dilworth Brothers, and shall hold the same as long as it is mutually agreeable with the majority of interest, and also that she shall have transferred to her credit twenty-five thousand dollars of my loan account in the aforesaid firm. Also that one hundred shares of one thousand dollars each in the firm of Dilworth, Porter & Co., Limited, be transferred to her account.

3. I also desire that my executors transfer to each of my children, twenty-six shares of one thousand dollars each in the firm of Dilworth, Porter & Co., Limited.

The balance of my estate shall be divided between my children, share and share alike, except what may be coming to my daughters, Lizzie and Lulu Beggs. Their moneys to be invested by my executors in bonds, mortgages or other good securities, they receiving the interest on same, and at their death to revert to their children after they have arrived at the age of twenty-one years.

4. As it is my desire to make some private bequests to whomsoever I may hereinafter direct by written memoranda to be enclosed with this my will, or to be found among my private papers, these said bequests I wish paid over within three years without interest.

Item :—I do nominate, constitute and appoint my sons, Lawrence, Charles R. and Joseph R. Dilworth, executors of my last will and testament.

Item :—Should my beloved wife desire to quit my present residence and deem it advisable to sell the same at any time in fee simple and invest the proceeds in securities as may be jointly agreed upon with my executors, it is my wish to grant her the power to do the same.

Witness my hand and seal the twenty-seventh day of December, 1884, A. D.

At the decedent's death he was possessed of a large amount of personal property and seized in fee simple of a large amount of real estate, situate in Pennsylvania, Minnesota and Missouri, and, inter alia, of a certain lot of ground in the 18th ward of Pittsburgh, bounded and described . . . . . and containing five acres more or less. The residuary estate consisted of both real and personal estate.

On August 1, 1887, the said C. C. and Lizzie D. Beggs and H. C. and Lulu D. Beggs, plaintiffs, contracted with said P. A. B. Widener, trustee, defendant, to sell and convey to him the undivided two fifths of the lot in the 18th ward for $12,000, payable in certain instalments, and on August 24, 1887, tendered a good and sufficient deed in pursuance of said contract, which deed was refused by the defendant on the ground that he was advised that under the will of said deceased the undivided two fifths of said lot was not vested in said defendants in fee simple. If the court should be of the opinion, etc., etc.

After argument, on October 8, 1887, the court, COLLIER, J., " being of opinion that under the will of Joseph Dilworth, deceased, the undivided two fifths of said lot of ground vested in said Lizzie D. Beggs and Lulu D. Beggs in fee simple, judgment is entered in favor of the plaintiffs in the sum of $12,000, to be released upon compliance by the defendant with the terms of the agreement set forth in the case stated."

Thereupon the defendant took this writ assigning said order as error.

*Mr. J. H. White*, for the plaintiff in error :

Arguments.

The whole contention is upon the construction of the second clause of the third paragraph of the will.

1. (a) The testator did not intend to die intestate as to any portion of his estate. He had devised both realty and personalty, and " the balance of my estate " means all his estate left. (b) He wished an equal division among his children, "share and share alike." (c) He put a limitation or condition on the shares coming to Lizzie and Lulu Beggs, out of this residuum. The exception applies to the whole share coming to them, and there is nothing in the language to prevent its application to real estate as well as to personal property. (d) The testator's explanation as to the meaning of this condition or limitation is to be found in the directions for investment, the receipt of interest on the same, "and at their death to revert to their children after they have arrived at the age of twenty-one years." This explanation applies to whatever was coming to Lizzie and Lulu out of the residuary estate.

2. The word "money" will be construed to include both real and personal property if required by the context. "Money," especially "moneys," has a popular sense, meaning what a man is worth; and is frequently held to include every kind of property : Miller's Est., 48 Cal. 165 ; Dawson v. Gaskom, 2 Keen 14 ; Kendall v. Kendall, 4 Russ. 360 ; Nevinson v. Lady Leonard, 34 Beav. 490 ; Morton v. Perry, 1 Met. 446 ; Schouler, Wills, § 505. We think, therefore, that the only mode of carrying out these four general intents of the testator would be to limit the plaintiffs' estate in the realty to a life estate, just as if the testator had said, " their shares of the money on hand and of the stocks and real estate, when converted into money, shall be invested," etc.

*Mr. William R. Blair,* for the defendants in error :

1. In only two classes of causes, we believe, has the word "moneys " been held applicable to real estate : (1) Where the testator has expressly so used it, as in a devise of " White-acre and all my other moneys ; " (2) in certain cases to avoid an alleged intestacy, where an intention to dispose of the whole estate is manifest from the whole will. Here, the testator has not used the word to designate a devise, and there is no threatened intestacy, as the whole estate has been previously disposed of.

2. The true and proper construction of this will is the one adopted by the court below, and is, we submit, this: "The balance of my estate (i. e. real and personal) shall be divided between my children share and share alike, except what may be coming to my daughters Lizzie and Lulu Beggs (to wit), their moneys to be invested by my executors," etc. In other words, "the balance of my estate (i. e. real and personal) shall be divided between my children share and share alike, except what moneys may be coming to my daughters Lizzie and Lulu Beggs: their moneys to be invested," etc.

OPINION, MR. JUSTICE PAXSON:

The will of Joseph Dilworth is inartificially drawn. The portion of it involved in this case is as follows: "The balance of my estate shall be divided between my children, share and share alike, except what may be coming to my daughters, Lizzie and Lulu Beggs. Their moneys to be invested by my executors in bonds, mortgages, or other good securities, they receiving the interest on same, and at their death to revert to their children after they have arrived at the age of twenty-one years."

The precise question for our determination is, What estate did the two daughters referred to take in the real estate of the testator? Was it a fee or a lesser estate?

We think it clear, from the will, that the testator did not intend to die intestate; that he intended an equal division among his children, and that he also intended to place some restriction upon the moneys coming to his two daughters. We need not stop to inquire how far he succeeded in impressing a trust upon the "moneys" as no such question is before us. But conceding that the "moneys" of the daughters was to be held in trust, does such trust extend to their shares of the real estate? The court below held that it did not, and that the daughters took a fee simple therein. In this we think the court was correct. The words "except what may be coming to my daughters, Lizzie and Lulu Beggs" might seem to cover both real and personal estate, but this general expression is qualified by the words immediately following: "Their moneys to be invested," etc. The testator may have thought that money is more fleeting in its character than real estate,

and therefore desired to place some restriction upon his daughters' use and enjoyment of their "moneys."

The word "moneys" used in wills has but seldom been held to apply to real estate, and the cases in which it has been so held have no application to the facts of the one under consideration. The clause of the will in question is awkwardly expressed. In our opinion the proper reading and meaning of it is this: "The balance of my estate, real and personal, shall be divided between my children, share and share alike, except what moneys may be coming to my daughters, Lizzie and Lulu Beggs; their moneys to be invested," etc. This appears very plain to us; so plain as hardly to require argument. We cannot assume that the testator intended to die intestate as to this portion of his real estate; and to hold that he had created a trust thereof and limited the daughters to a life estate, would be making a will for him. Finding no error in this record,

The judgment is affirmed.